## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

NATALIE TOMASELLI AND
JENNIFER DEANGELIS,
      Plaintiffs

v.

                                   C.A. NO. 1:23-cv-00303-MSM-LDA

HASBRO, INC.
        Defendant

### AMENDED COMPLAINT

### INTRODUCTORY STATEMENT

This action is commenced by Natalie Tomaselli and Jennifer DeAngelis (hereinafter also referred to as "Plaintiffs" or "Tomaselli" or "DeAngelis") against Hasbro, Inc. (hereinafter also referred to as "Defendant" or "Employer" or "Company"), in order to remedy and seek relief for the Defendant's unlawful and discriminatory employment practices based on the Plaintiffs' religions; religious practices and religious beliefs; Plaintiffs' disabilities; perceived disabilities and in retaliation for the Plaintiffs asserting their rights to a lawful work environment, in violation of, *inter alia*, The Rhode Island Civil Rights Act, The Rhode Island Fair Employment Practices Act and pursuant to the Court's pendent jurisdiction, the federal Title VII of the Civil Rights Act and the Americans with Disabilities Act.

### JURISDICTION AND VENUE

1. Jurisdiction of the Court is invoked pursuant to R.I.G.L. 8-2-13 and 8-2-14. All conditions precedent to establishing this Court's jurisdiction over this action have occurred or have been complied with.

2.    Considerations of judicial economy, convenience, and fairness to the litigants warrant exercise of the court's supplemental jurisdiction with respect to Plaintiffs' state law claims.  Plaintiffs' state claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy.

3. Venue is proper in the district pursuant to inter alia, R.I.G.L. 9-4-4 because:

a.    The alleged unlawful practices occurred and/or are continuing to occur within the State of Rhode Island, and in the judicial district;

b.    all records relevant to the alleged unlawful practices are maintained and administered in the Defendant's place of business in the city of Providence, Rhode Island;

c.    the Plaintiffs would currently be enjoying all rights, benefits, and privileges of their employment, as a full-time employees of Defendant, in the city of Providence, Rhode Island, but for the Defendant's unlawful practices.

4.     Plaintiffs timely filed formal Charges of Discrimination with the Rhode Island Commission for Human Rights ("RICHR"), alleging that they had been discriminated against on the basis of their religion(s), *inter alia*, and were the subject of unlawful retaliation.

5.     The Plaintiffs have complied with all jurisdictional prerequisites and conditions precedent to the filing of the action in state court, in each of its counts, including requesting Right To Sue Authorization, if necessary, from the pertinent administrative agency(ies).

## THE PARTIES

6. The Plaintiff, Natalie Tomaselli ("Tomaselli" or "Plaintiff"), an individual, is a resident of Providence, Rhode Island. The Plaintiff, Jennifer DeAngelis ("DeAngelis" or "Plaintiff"), an individual, is a resident of North Attleboro, MA.

7. On information and belief, Hasbro, Inc., is a domestic corporation authorized to do business under the laws of the State of Rhode Island. The corporation engages in the business of toy manufacturing and development. On information and belief, Hasbro, Inc., is a domestic corporation authorized to do business under the laws of the State of Rhode Island.

8. At all times material to the allegations of this Complaint, the Defendant has continuously, and does now, employ at least 50 or more employees in the State of Rhode Island.

9. At all times material to the allegations of this Complaint, the Defendant has continuously been engaged in an industry affecting commerce within the meaning of those terms as applicable to pertinent provisions of applicable laws.

10. At all times material to the allegations of this Complaint, the Defendant was and is an "Employer" or otherwise a covered entity within the meaning of pertinent provisions of Title VII, and also under the provisions of R.I.G.L. § 42-112-1 et seq. (The Rhode Island Civil Rights Act of 1990) and R.I.G.L. § 28-5-1- et seq. (The Rhode Island Fair Employment Practices Act).

11. At all times material to the allegations of this Complaint, both Plaintiffs held the status of an "individual" within the pertinent provisions defining that term and qualified

as a person with a disability under 3(2) of the ADA, 42 U.S.C. 12112(a) and also pursuant to Rhode Island law, because they:

      a.    had a physical or emotional impairment that substantially limits one or more of their major life activities;

      b.    has a record of such an impairment; and/or

      c.    is/was regarded by the Defendant as having such an impairment.

      d.    During the incidents cited in this Complaint, DeAngelis suffered from one or more impairments related to pregnancy which qualified as a "disability" for purposes of applicable statutes**. She suffered from significant high blood pressure, severe migraines and debilitating fatigue which were exacerbated by the condition of her pregnancy and remained after she gave birth.** She was eligible for reasonable accommodations with respect to the impairments.

      e.    During the incidents cited in this Complaint, Tomaselli suffered from one or more impairments which qualified as a "disability" for purposes of applicable statutes.

### FACTS APPLICABLE TO EACH COUNT

12.    Plaintiff Tomaselli is female.  She commenced employment with the Defendant in 2018.

13.    At the time of the incidents cited in the Complaint, Tomaselli had worked for the company for approximately 4 years, most recently in the position of Assoc. Manager, Global Brand Publicity.

14.    Plaintiff's sincere religious beliefs/practices and the fact that she is a qualified individual with a disability motivated her decision not to receive the Covid 19 vaccination.

15.      It was Tomaselli's reasonable belief that she was qualified for a religious exemption to any vaccine mandate.  Tomaselli's decision not to receive the vaccine was motivated by her sincerely held religious beliefs and because she suffered from certain medical impairments.

16.      On or about October 7, 2021, Tomaselli submitted a Religious Exemption to the Vaccination Requirements form to the Defendant.  At all times, she was willing and capable of complying with social distancing, testing, monitoring and facial covering requirements, and all other reasonable requests arising from accommodation of her sincerely held religious beliefs.

**17.      In the form for her request for a religious exemption regarding the mandate for the Covid vaccine, Tomaselli stated to the Defendant that she had been a Christian for 34 years.  She indicated that she has followed the teaching of the Bible throughout her life.  She stated "I believe that no person should be forced or coerced into putting anything into their bodies that they do not willingly consent to. To do this is a sin.  Those who attempt to exercise this type of power over another person(s) will be judged in the eye of the Lord accordingly."  (Attachment No. 1 to Amended Complaint)**

**18.      Tomaselli also stated that she held a sincere religious belief that abortion is a profound sin, that it is "the most heartless and soulless crime one can commit...abortion for profit is rampant in our society and it is my life and spiritual choice to choose not to support any industry, people or activities that engage or support the demand of abortion for profit even under the guise of scientific research."**

19.     Tomaselli's position was based in part on evidence that vaccines developed by companies such as Moderna, Pfizer, and Johnson and Johnson were reported to have used fetal cell lines from aborted babies for research purposes.

20.      As described below, Tomaselli also suffers from a legally qualified medical impairment.  Tomaselli was concerned, and reported to management, that, in addition to her sincerely held religious beliefs, inadequate testing had been accomplished with respect to Covid vaccines and she had no assurances that, in light of her medical condition, the vaccinations would not exacerbate her medical conditions.

21.     Tomaselli is a qualified person with a disability in that she suffers from a substantial physical or mental impairment which substantially limits one or more of her major life activities as further discussed below.

22.     Notwithstanding her status as a qualified person with a disability, Tomaselli was able to perform the essential functions of her job either with or without reasonable accommodation.

23.     The employer was aware of Tomaselli's medical condition, although Hasbro never provided her with any reasonable accommodation despite her requests.

24.     Tomaselli has suffered since 2001 from a condition entitled a desmoid tumor.  This condition has caused her to undergo chemotherapy, hormone therapy and radiation.

25.     Desmoid tumors are soft tissue sarcoma which is a cancer that arises from the fibrous tissue of the body.  The WHO, NIH, and American Cancer Society

**have placed desmoid tumors in the category of intermediate, locally aggressive cancers. Such tumors are aggressive and have a tendency to become multi-focal, meaning they can grow into other parts of the body.**

26.     **This medical condition causes significant pain to Tomaselli to her hip, leg and spine. The medication she is required to take for the pain also causes various side effects. In combination, the condition causes Tomaselli sleeplessness, extreme pain, fatigue, issues with respect to concentration and related impairments, including impacting her ability to walk, work, and certain other essential functions.**

27.     **Tomaselli requested, *inter alia*, reasonable accommodation in the form of an exemption from the vaccine and medical leave. As a result, she suffered reprisal from the employer.**

28.     The company discriminatorily targeted, singled out and punished Tomaselli for her sincerely held religious beliefs, as described below.

29.     The company also discriminated and retaliated against Tomaselli because she reported to the company what she perceived as a toxic work environment regarding bullying and hostile treatment.

30.     **The company also discriminated and retaliated against Tomaselli because she was a qualified person with a disability, because it regarded her as such and because she required reasonable accommodation.**

31.     On October 10, 2021, a mere 3 days after submitting her Religious Exemption to the Vaccination Requirement form, Tomaselli's Hasbro employee badge was turned off and she was no longer able to enter the office or any event requiring Hasbro identification.

32.      On October 21, 2021, the employer's office of Human Resources contacted Tomaselli to advise her that instead of investigating her claim(s) of workplace bullying and misconduct, the employer opened a Code of Conduct investigation against her for allegedly not wearing a mask at a volunteer event where she cleaned vacant camp cabins on June 30, 2021 (four months prior).

33.      Tomaselli was accused by the company of placing immunocompromised children at risk.  There was absolutely no basis for this allegation **and the employer's alleged concern was not brought to Tomaselli's attention until after she had requested an exemption from the vaccination based on her sincerely held religious beliefs and her medical condition**.

**34.      Nevertheless, Tomaselli was given a written warning.**

35.      Tomaselli was compelled to go on medical leave on November 2, 2021 due to the stress and anxiety caused by the company, as well as another serious medical condition **involving cancer**.

36.      Tomaselli's sensitive and confidential medical information was also disseminated to her coworkers by the employer without her authorization.

37.      During her leave, Tomaselli was informed by the company that because of the written warning she received, she would be removed from consideration for two promotional opportunities until she was able to demonstrate that she could act with integrity, in conjunction with the company's values and Code of Conduct, **essentially reiterating the warning she had received at the end of October 2021 for allegedly engaging in misconduct, a pretext to conceal Hasbro's retaliatory motive.**

38.    Tomaselli was informed that she was ineligible for consideration for a promotion at that time.

39.    Tomaselli returned to work from her medical leave on June 5, 2022.  At that time, her supervisor appeared surprised that she had returned and told her multiple times that she had no idea Tomaselli was coming back.

40.    Tomaselli was removed from the company's internal team organizational charts **while others on leave remained on these charts**.

41.    Within one week's notice, Tomaselli was asked by the company to attend an out of state conference which required full vaccination.  She was compelled to decline attendance due to her vaccination status, a status that the employer was fully aware of.

42.     In Tomaselli's first 1:1 meeting with her supervisor after her return to work, she was informed that her final written warning/code of conduct issue was still in effect.  She was also asked to handle three other events which required vaccination— which the company knew she did not have.

43.    Tomaselli was then informed that she needed to submit all vacation requests and approval for days off and that her requests were being "tracked" by the employer (throughout her entire tenure of employment, vacation and days off were not tracked by the employer in light of the onerous schedule assigned to Tomaselli and her team.)

44.    Tomaselli's new and current manager stated to her that she was aware that Tomaselli was not allowed in the office indicating that she had knowledge from the employer that Tomaselli was not vaccinated.  **This manager also informed Tomaselli's co-workers that she was not likely to return to her job from her medical leave.**

These were personal and private facts regarding Tomaselli's health information, the confidentiality of which the employer disregarded in an effort to retaliate against her.

45.     The employer never approved Tomaselli's request for an accommodation/religious exemption, even though Tomaselli promptly submitted a supplemental affidavit at the employer's demand.  The company preferred to focus on what it now claims were incidents of misconduct even though Tomaselli had a previously unblemished record.

46.     The Employer issued a FAQ stating that if an employee chooses not to be vaccinated "it will impact the way you are able to do your job…if your performance suffers, or there is negative impact on your team, that will be looked at and managed as a performance issue."

47.     There would have been no undue hardship to the employer had it reasonably accommodated Tomaselli.

48.     The timing of the adverse actions taken with respect to Tomaselli substantiate that she was suffering retaliation in response to her reasonable requests for accommodation and that the discipline and related mistreatment she suffered were causally related to her protected activity.

49.     The harassment and retaliation suffered by Tomaselli were repeated, severe and pervasive and was both objectively and subjectively offensive.

50.     On August 22, 2022, Tomaselli was compelled to file a letter of resignation due to the difficult terms and conditions of employment to which she was being subjected which no reasonable person could be expected to endure.

51.    The facts indicate that Tomaselli was being treated in a disparate and retaliatory manner because she submitted a bona fide request for exemption from the company's vaccination requirement based on religion and medical status, because she suffered from certain medical impairments, because she requested and availed herself of medical leave time and reported the company for a toxic work environment.

52.    Plaintiff DeAngelis is female.  She commenced her employment with Hasbro, Inc. on October 29, 2012.  At the time of the incidents cited in the Complaint, DeAngelis worked for the company for approximately ten years, most recently holding the position of Sr. Manager, Global Brand Publicity.

53.    During many of the incidents cited in the complaint, DeAngelis was pregnant and, at one time, was compelled to request a medical leave of absence due to issues related to her pregnancy.

**54.    The issues referenced above included severe recurrent morning sickness, significantly elevated high blood pressure and extreme and debilitating fatigue, as well as severe migraine headaches.**

**55.    The above referenced symptoms of high blood pressure, severe migraines and abnormal fatigue pre-existed DeAngelis' pregnancy, although may have been further exacerbated by the pregnancy.  The symptoms from which she suffered represent severe physical or mental impairments.**

**56.    These symptoms have impacted a number of DeAngelis' major life activities including, *inter alia*, her ability to work at times but did not prevent her from performing the essential duties of her position with or without reasonable accommodation.**

57. **DeAngelis requested flexibility with respect to hours and days off as needed, as well exemption from vaccine requirements. There was no genuine effort on behalf of the employer to engage in an interactive process to accommodate DeAngelis. Rather, with respect to her religious exemption request, her clearly articulated religious belief was met with suspicion and essentially a categorical denial.**

58. **As a result of DeAngelis' pregnancy, she was against taking any vaccine because of the paucity of scientific information relative to the impact of the vaccine on pregnant women and their unborn babies.**

59. **DeAngelis is a Christian. DeAngelis held sincere religious beliefs which impacted her decision not to get the vaccine.**

60. DeAngelis' sincere religious beliefs and status of pregnancy motivated her decision not to receive the Covid 19 vaccination and it was her reasonable belief that she was qualified for a religious exemption to any vaccine mandate.

61. On September 23, 2021, DeAngelis submitted a Religious Exemption to the Vaccination Requirement form to the company. **In this form, DeAngelis stated that it washer sincerely held religious belief that forcing upon someone any substance is "equivalent to the sin and crime of rape." She also articulated her concern regarding the effect of any vaccine on her unborn child, and stated that she believed that she would not take a vaccine that had been developed or tested on aborted human tissue. She equated this to the sin of child sacrifice that the Bible identifies as a sin. (Attachment 2) In that statement, DeAngelis specifically and clearly requested two reasonable accommodations.**

62.     On October 1, 2021, the company responded that it could not confirm her religious beliefs were "bona fide" and demanded that she execute a two page affidavit and supply two letters from "people close to [her]" who would attest to her religious beliefs.  DeAngelis complied with this request.

63.     At all times, DeAngelis was willing and capable of complying with social distancing, testing, monitoring and facial covering requirements, and all other reasonable requests arising from accommodation of her sincerely held religious beliefs.

64.     Nevertheless, the company discriminatorily targeted, singled out and punished DeAngelis for her sincerely held religious beliefs.

65.     The company also discriminated and retaliated against DeAngelis because she reported to the company what she perceived as a toxic work environment regarding bullying and hostile treatment.

66.     Examples of the retaliatory conduct to which she has been subjected is as follows:  DeAngelis was denied access to employer office(s) and official Hasbro events; DeAngelis was denied a previously promised promotion for which she was objectively the most qualified candidate and DeAngelis' sensitive and confidential medical information was disseminated to her coworkers by the employer without her authorization.

67.     DeAngelis was informed that she needed to submit all vacation requests and approval for days off and that her requests were being "tracked" by the employer (throughout her entire decade of employment, vacation and days off were not tracked by the employer in light of the onerous schedule assigned to DeAngelis and her team.)

68.     DeAngelis was served a "final written warning" dated October 27, 2021, less than two months after she applied for the religious exemption and after 9 years of unblemished performance and no prior alleged infractions.  This warning removed DeAngelis from future promotional opportunities and threatened her with discharge.

69.     The above referenced memorandum accused DeAngelis, *inter alia*, of having failed to comply with the Company's Code of Conduct, alleging that she jeopardized the health and safety of co-workers and others by not wearing a mask, and otherwise failed in her responsibility to provide "ethical leadership."

70.     Among other false allegations, DeAngelis was accused of putting "immunocompromised children at risk" in the course of a charitable event, on June 30, 2021, when she participated as a volunteer cleaning vacant cabins for a nonprofit organization serving immunocompromised children and their families.

71.     DeAngelis never engaged in any violation of the Company's Code of Conduct.  No negative feedback was given to DeAngelis regarding her conduct at the time of the referenced charitable event.  It was not until four months *after* the event occurred, and only after DeAngelis engaged in various incidents of legally protected conduct including but not limited to requesting reasonable accommodation(s) with respect to her vaccine status, that she was interrogated and reprimanded by the company.

72.     When DeAngelis returned to work from her pregnancy leave, she learned that the company filled her position with a new hire.

73.      On August 22, 2022, DeAngelis was compelled to file a letter of resignation due to the difficult terms and conditions of employment to which she was subjected which no reasonable person could be expected to endure.

74.    The facts indicate that DeAngelis was treated in a disparate and retaliatory manner because she submitted a request for exemption from the company's vaccination requirement, reported the company for a toxic work environment and requested medical leave due to issues with her pregnancy **and other medical impairments** in violation of Title VII of the Civil Rights Act of 1964, the RI Civil Rights Act; the RI Fair Employment Practices Act and other state and federal laws.

75.    Specifically, during the incidents cited in this Complaint, DeAngelis suffered from one or more impairment related to pregnancy which qualified as a "disability" for purposes of applicable statutes.  She was eligible for reasonable accommodations with respect to these impairments.  During the incidents cites in this Complaint, Tomaselli suffered from one or more impairments which qualified as a "disability" for purposes of applicable statutes.

COUNT I
RHODE ISLAND CIVIL RIGHTS ACT
R.I.G.L. SECTION 42-112-1
Discriminatory Terms and Conditions of Employment
Based on Religion and Disability
Retaliation
Failure to Accommodate
Constructive Termination

76.    The allegations contained in Paragraphs 1-75 above are incorporated herein by reference in their entirety.

77.    The Defendant's discriminatory conduct, policies, and practices are violative of the provisions of the Rhode Island Civil Rights Act of 1990, R.I.G.L. 42-112-1 et seq., by:

a.  interfering with Plaintiffs' rights to avail themselves of the full and equal benefit and protection of state and federal laws intended to prevent discrimination in the workplace based on religion and/or disability status/perception of disability;

b.  depriving Plaintiffs of the status, benefits, privileges, and other terms and conditions accruing to the employment relationship(s) to which they are entitled;

c.  treating them in a hostile, demeaning, and otherwise unlawful manner based on religion and/or disability status/perception of disability;

d.  causing Plaintiffs lost income and benefits, humiliation, physical and emotional injury, as well as harm to their personal and professional reputation(s).

78.  The unlawful practices engaged in by the Defendant were motivated by impermissible and unlawful considerations concerning Plaintiffs' religions and/or Plaintiffs' disability/perception of disability.  Such practices include, but are not limited to, Defendant:

a.)  subjecting Plaintiffs to discriminatory terms and conditions of employment because of their disability and because of their religious beliefs;

b.)  retaliating against the Plaintiffs for their disabilities and religious beliefs by treating them in a disparate and discriminatory manner;

c.)  retaliating against Plaintiffs for requiring reasonable accommodation; and

d.)  constructively terminating Plaintiffs.

79.    But for the Defendant's intent to discriminate against Plaintiffs because of their disability/its perception that they were disabled and because of their religious beliefs, Defendant would not have subjected them to discriminatory terms and conditions of employment, retaliated against Plaintiffs, refused to accommodate Plaintiffs, or constructively terminated the Plaintiffs.

80.    The Defendant purposefully, maliciously, and without justification or excuse, took discriminatory action with respect to Plaintiffs' employment because of Plaintiffs' disability/its perception they were disabled and their religious beliefs.  The Defendant's conduct has unlawfully deprived Plaintiffs of income, benefits, privileges, promotions, and other terms and conditions accruing to the employment relationship to which they were entitled; has caused harm to their reputations; and has caused them humiliation, as well as physical and/or emotional injury.

WHEREFORE, Plaintiffs pray that judgment be entered herein against Defendant and in favor of Plaintiffs for all damages and equitable relief available, as hereinafter requested.

COUNT II
AMERICANS WITH DISABILITIES ACT
ADA-42 U.S.C. SEC. 12117
Discriminatory Terms and Conditions of Employment
Constructive Termination
Retaliation
Failure to Accommodate

81.    The allegations contained in Paragraphs 1-80 above are incorporated herein by reference in their entirety.

82.    At all times material to the allegations in this Complaint, Plaintiffs were qualified individuals with a disability and the Defendant perceived them as being disabled.

83.    Despite their disability or impairment, Plaintiffs were able to perform the essential duties of their position, either with no need for accommodation or with reasonable accommodation.

84.    The Defendants have engaged in unlawful employment practices in violation of the ADA, sec. 102(a), 102(b)(1) and 102(b)(5)(B), 42 U.S.C. sec.12112(a), 12112(b)(1) and 12112(b)(5(B), in addition to other sections.

85.    But for the Defendant's intent to discriminate against the Plaintiffs because of their status as a qualified person with a disability, Defendant would not have engaged in the conduct alleged in this Complaint; would not have applied discriminatory terms and conditions of employment to the Plaintiffs; retaliated against the Plaintiffs; failed to provide the Plaintiffs with reasonable accommodation; or constructively terminated them.

WHEREFORE, Plaintiffs pray that judgment be entered herein against Defendant and in favor of Plaintiffs for all damages and equitable relief available, as hereinafter requested.

COUNT III
RHODE ISLAND FAIR EMPLOYMENT PRACTICES ACT
R.I.G.L. § 28-5-1 et seq.
Discriminatory Terms and Conditions of Employment
Constructive Termination
Retaliation
Failure to Accommodate

86.    Paragraphs 1-85 above are herein incorporated by reference in their entirety.

87.    Defendant willfully engaged in a policy or practice of discriminating against employees based on their religious beliefs and/or their disabilities or who they perceived as having disabilities, including Plaintiffs, and in maintaining discriminatory employment policies and practices, in violation of the RIFEPA.

88.    The Defendant's discriminatory conduct, policies, and practices are violative of the provisions of the RIFEPA, by:

a.) interfering with Plaintiffs' rights to avail themselves of the full and equal benefit and protection of state and federal laws intended to prevent discrimination in the workplace based on religious beliefs and disability/perceived disability;

b.) depriving them of the status, benefits, privileges, and other terms and conditions accruing to the employment relationship to which they were entitled;

c.) treating them in a hostile, demeaning, and otherwise unlawful manner based on religious beliefs and/or disability/perception of disability;

d.) causing them lost income and benefits, humiliation, physical and emotional injury, as well as irreparable harm to their personal and professional reputations.

89.  The unlawful practices engaged in by the Defendant was motivated by impermissible and unlawful considerations concerning Plaintiffs' religious beliefs and/or disability/perceived disability.  Such practices include, but are not limited to, Defendant:

    a.)  constructively terminating Plaintiffs because of their religions and/or disability/perception of disability;

    b.)  retaliating against Plaintiffs for requiring reasonable accommodation;

    c.)  subjecting Plaintiffs to discriminatory terms and conditions of employment based on religious beliefs and/or disability/perceived disability; and

    d.)  failing to provide reasonable accommodation to the Plaintiffs.

90.  But for the Defendant's intent to discriminate against Plaintiff because of their religious beliefs and/or disability/perceived disability, Defendant would not have subjected them to discriminatory terms and conditions of employment, retaliated against them, or constructively terminated them.

91.  The Defendant's conduct has unlawfully deprived Plaintiffs of income, benefits, privileges, promotions, and other terms and conditions accruing to the employment relationship to which they were entitled; has caused irreparable harm to their reputation and professional mobility; and has cause them extreme humiliation, as well as physical and emotional injury.

WHEREFORE, Plaintiffs pray that judgment be entered herein against Defendant and in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

COUNT IV
THE RI WHISTLEBLOWERS' PROTECTION ACT
TITLE 28
SECTION 28-50-1

92.    The allegation in paragraphs 1-91, above, are incorporated herein by reference, in their entirety.

93.    The Defendant's conduct as described above was motivated by an intent to discriminate against the Plaintiffs and retaliate against the Plaintiffs because, *inter alia*, they asserted their legally protected rights to avail themselves to a lawful working environment and for complaining about conduct which they reasonably believed to be unlawful.

94.    But for the Defendant's intent to retaliate against the Plaintiffs because of their conduct referenced in the previous paragraph, Defendant would not have retaliated against the Plaintiffs or subjected her to discriminatory terms and conditions of employment.

95.    Defendant's conduct is in violation of the RI Whistleblowers' Act, RIGL section 28-50-01 *et seq.*

96.    As a result of Defendant's unlawful conduct, Plaintiffs have suffered severe distress, with resulting physical and/or emotional injuries, humiliation, harm to their career, harm to their reputation, lost wages, lost opportunities for advancement, attorney's fees, and other damages.

WHEREFORE, Plaintiffs prays that judgment be entered herein against the Defendant and in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

COUNT V
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
42 U.S.C. §2002, ET SEQ.
Discriminatory Terms and Conditions of Employment and Retaliation based on Religion
and Religious Observations

97.  Paragraphs 1-96 above are herein incorporated by reference in their entirety.

98.  Defendant willfully engaged in a policy or practice of discriminating against the Plaintiffs because of their religious beliefs, and in maintaining discriminatory employment policies and practices, in violation of Title VII.

99.  The Plaintiffs in this matter maintained bona fide religious beliefs/practices which conflicted with certain employment requirement(s) of the Defendant.

100.    Plaintiffs brought these practices to the attention of the employer.

101.    Plaintiffs' religious practices/beliefs/observations were the basis for the employer's adverse employment decisions as stated above.

102.     The employer engaged in negative conducts towards the Plaintiffs in retaliation for their asserting their religious beliefs.

103.     The employer retaliated against the Plaintiffs for requesting reasonable accommodation based on their religious beliefs.

104.       The Defendant's discriminatory conduct, policies, and practices are violative of the provisions of Title VII, by:

a.)  interfering with Plaintiffs' right to avail themselves of the full and equal benefit and protection of state and federal laws intended to prevent discrimination in the workplace based on religion;

b.) depriving them of the status, benefits, privileges, and other terms and conditions accruing to the employment relationship to which they were entitled;

c.) treating them in a hostile, demeaning, and otherwise unlawful manner based on religion;

d.) causing them lost income and benefits, humiliation, physical and emotional injury, as well as irreparable harm to their personal and professional reputations.

105.    The unlawful practices engaged in by the Defendant was motivated by impermissible and unlawful considerations concerning Plaintiffs' religion.  Such practices include, but are not limited to, Defendant:

a.) subjecting Plaintiffs to unlawful terms and conditions of employment because of their religion;

b.) retaliating against Plaintiffs for asserting their rights to be free from discrimination based on religion;

c.) subjecting Plaintiffs to discriminatory terms and conditions of employment.

106.    But for the Defendant's intent to discriminate against Plaintiffs because of their religion, Defendant would not have subjected them to discriminatory terms and conditions of employment or retaliated against them.

107.    The Defendant's conduct has unlawfully deprived Plaintiffs of income, benefits, privileges, promotions, and other terms and conditions accruing to the employment relationship to which they were entitled; has caused irreparable harm to their reputation and professional mobility; and has cause her extreme humiliation, as well as physical and emotional injury.

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendant and in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendant, and in favor of Plaintiff for all damages and equitable relief available, including, but not limited to:

a.) an order that the Defendant institute and carry out practices, policies and programs which provide equal employment opportunities to qualified individuals, regardless of disability/perception of disability and regardless of religion;

b.) an order that the Defendant make whole the Plaintiffs with appropriate promotional opportunities, lost earnings, back-pay, front-pay, the value of lost benefits, and interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

c.) an order that the Defendant make whole the Plaintiffs by providing for any additional pecuniary losses and compensation for the damages done to their valuable reputation, in amounts to be determined at trial;

d.) an order the Defendant make whole the Plaintiffs by providing compensation for non-pecuniary losses, including but not limited to emotional pain, suffering, humiliation, and mental anguish in amounts to be proven at trial, including an appropriate award of compensatory damages pursuant to R.I.G.L. § 28-50-4, 42-112-2, and 28-5-24;

e.) grant attorney's fees and the costs of this action;

f.) grant punitive or exemplary damages, as appropriate to punish the Defendant for its malicious conduct and/or for its reckless and/or callous indifference to the statutorily protected rights of the Plaintiffs, including an appropriate award pursuant to R.I.G.L. § 28-50-4, 42-112-2, and 28-5-1;

g.) grant an appropriate award of prejudgment interest, including an award of interest for all damages awarded to the Plaintiffs from the date this cause of action accrued, pursuant to R.I.G.L.§ 9-21-10;

h.) grant such further relief as this court deems necessary and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by jury of all issues pertinent to the causes in this Complaint triable as of right by jury.

Respectfully Submitted,
Natalie Tomaselli and
Jennifer DeAngelis,
By their Attorney,

*/s/ Stephen T. Fanning*
_____
Stephen T. Fanning #3900
305 South Main Street
Providence, RI 02903
401-272-8250
401-272-4520 (FAX)

**ALL PAGES FOLLOWING LEFT BLANK INTENTIONALLY**