# United States Court of Appeals
## For the First Circuit

———————————

No. 24-1655

JENNIFER DEANGELIS; NATALIE TOMASELLI,

Plaintiffs, Appellants,

v.

HASBRO, INC.,

Defendant, Appellee.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary S. McElroy, U.S. District Judge]

———————————

Before

Barron, Chief Judge,
Gelpí and Aframe, Circuit Judges.

———————————

Stephen T. Fanning for appellants.

Leslie D. Parker, with whom Patricia K. Rocha, Christoper J. Yagoobian, and Adler Pollock & Sheehan, P.C., were on brief, for appellee.

———————————

January 29, 2026

———————————

AFRAME, <u>Circuit Judge</u>.  This is an appeal from the dismissal of retaliation and discrimination claims brought by two former employees of Hasbro, Inc., the global toy and game company. These former employees sought exemptions from Hasbro's COVID-19 vaccination policy on religious grounds and then, after not receiving the requested exemptions, resigned their employment.  We vacate the dismissals and remand for further proceedings.

## I.

Because this appeal arises from the dismissal of the plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), we draw the facts from the operative complaint, accepting the well-pleaded allegations as true and affording to the plaintiffs all reasonable inferences from those allegations. <u>Better Way Ford, LLC</u> v. <u>Ford Motor Co.</u>, 142 F.4th 67, 77 (1st Cir. 2025).

### A.   <u>Natalie Tomaselli</u>

In late 2021, Hasbro announced a policy requiring all employees entering its offices to receive a vaccination against the SARS-CoV-2, the virus that caused the COVID-19 pandemic.  At the time, the first plaintiff, Natalie Tomaselli, worked as Hasbro's Associate Manager for Global Brand Publicity.  She had worked for the company since 2018 and had worked remotely since March 2020, when the pandemic began.  On October 7, 2021, she emailed Hasbro asking for an accommodation from its vaccination

policy; specifically, she requested to "continue to be a remote employee and only enter the office on an extremely limited and as needed basis." She explained that she was an observant Christian and that the vaccination requirement violated several tenets of her religious beliefs, namely one against putting substances into her body without her consent and another against abortion. The latter objection was implicated because Tomaselli believed that the COVID-19 vaccines were developed using tissue from aborted fetuses. She provided citations to the Bible which, she said, supported her views.

Three days after Tomaselli requested this accommodation, her employee badge stopped working, and she could no longer enter Hasbro's offices or any event requiring company identification. Thereafter, on October 21, 2021, Hasbro's human resources office informed Tomaselli that Hasbro had opened an investigation into whether she had violated company policy by allegedly failing to wear a mask at a volunteer event over three months earlier, in June 2021, at which Hasbro employees cleaned vacant camp cabins. As a result of the investigation, Hasbro issued Tomaselli a written warning.

On November 2, 2021, Tomaselli began a medical leave caused by stress and anxiety from her employment as well as an unrelated medical condition. During Tomaselli's leave, Hasbro removed her from its internal organizational charts, even though

others on leave remained on the charts; her manager informed her colleagues that she was unlikely to return after her medical leave; and Hasbro told her that, because of the written warning, she was generally ineligible for promotions and would not be considered for two particular promotions that were then available.

Tomaselli returned from her medical leave in early June 2022. Her supervisor appeared surprised by her return and shortly thereafter asked Tomaselli to participate in at least four events that required her full vaccination, despite knowing that she was unvaccinated. Tomaselli was also informed that her written warning was still operative and that if she wanted vacation, she would have to submit requests for pre-approval, which was a marked change from prior procedure. In addition, around this time, Hasbro issued an announcement which stated that a negative effect on productivity caused by an employee's choice to remain unvaccinated would be deemed a performance issue. On August 22, 2022, Tomaselli resigned, citing severe and pervasive harassment and retaliation. At no point prior to her resignation did Hasbro act on Tomaselli's October 7, 2021, accommodation request.

### B. **Jennifer DeAngelis**

The second plaintiff, Jennifer DeAngelis, worked as Hasbro's Senior Manager for Global Brand Publicity. She had worked for the company since 2012, and like Tomaselli, had been working remotely during the COVID-19 pandemic. At an unspecified time,

DeAngelis submitted an initial request for an accommodation from Hasbro's COVID-19 vaccination policy. The contents of her initial accommodation request are not detailed in the complaint.

Hasbro responded to DeAngelis's initial request on September 20, 2021. In an email, the company stated that it was "willing to provide flexibility" with respect to its employees' working arrangements, "including the ability to continue to work from home temporarily," and that, consequently, it was "putting on hold formal requests to work remotely as religious or medical accommodations to the mandatory vaccine requirement." Hasbro invited DeAngelis to inform her manager that she was interested in continuing to work remotely. Hasbro also requested that, if DeAngelis wanted an alternative accommodation, she respond with more information regarding the desired accommodation.

Three days later, DeAngelis responded. She explained that it was her "sincerely held religious belief that forcing upon someone any substance [was] 'equivalent to the sin and crime of rape.'" She also objected to the COVID-19 vaccines particularly because she understood them to have been "developed or tested on aborted human tissue," which she equated "to the sin of child

sacrifice." Like Tomaselli, DeAngelis supported her religious objection to the COVID-19 vaccines with biblical citations.[1]

DeAngelis requested that Hasbro accommodate her by allowing her to "keep primarily working from home" and "on the very rare occasions where [she] would have to go into the office," to do so while observing certain protocols, including screening herself for symptoms, practicing social distancing, and wearing a face mask. About a week later, Hasbro requested that DeAngelis execute an affidavit, the apparent purpose of which was to verify her asserted religious beliefs, and to submit letters from others attesting to the sincerity of her beliefs, both of which DeAngelis did.

Thereafter, Hasbro issued DeAngelis a "final written warning." The warning, dated October 27, 2021, alleged that DeAngelis had jeopardized the health and safety of her colleagues and others by not wearing a mask and had otherwise failed to provide ethical leadership. The conduct to which the warning apparently referred was DeAngelis's alleged failure to wear a mask

---

[1]    DeAngelis, who was then pregnant, also requested an accommodation on medical grounds. She later asserted various disability-discrimination claims against Hasbro. Those claims were dismissed by the district court, as were disability-discrimination claims asserted by Tomaselli relating to the medical condition that contributed to her going on leave. Neither plaintiff has challenged the dismissal of their disability-related claims. We therefore do not further discuss them.

at the same volunteer event held months earlier for which the company also investigated and cited Tomaselli. The warning threatened DeAngelis with discharge and resulted in her removal from consideration for future promotion opportunities. DeAngelis's performance record had been unblemished during her previous nine years at the company.

Subsequently, DeAngelis began a medical leave for her pregnancy. By the time she returned, Hasbro had filled her position with a new hire. DeAngelis asserts that Hasbro also denied her access to its offices and events, denied her a previously promised promotion for which she was the most qualified candidate, disseminated certain unspecified aspects of her medical information to other employees without her approval, and contrary to prior practice, required her to submit all vacation requests and obtain advanced approval for days off. DeAngelis resigned on August 22, 2022, the same day as Tomaselli, and, like Tomaselli, she alleges that Hasbro's actions compelled her resignation.

### C.    **The District Court Proceedings**

Tomaselli and DeAngelis sued Hasbro in Rhode Island state court, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2002 et seq., the Rhode Island Civil Rights Act, R.I. Gen. L. § 42-112-1, and the Rhode Island Fair Employment Practices Act, R.I. Gen. L. § 28-5-1, for retaliation

and discrimination.[2]  Hasbro removed the action to federal district court, and, after the plaintiffs amended their complaint, moved to dismiss.

After a hearing, the district court granted Hasbro's motion.  The court first held that the plaintiffs' exemption requests were "not based on religion."[3]  With respect to the unwanted introduction of a vaccine into their bodies, "[t]he

_____

[2]    We have previously analyzed claims under the Rhode Island Civil Rights Act and the Rhode Island Fair Employment Act together with Title VII.  See Ripoli v. R.I. Dep't of Hum. Servs., 123 F.4th 565, 571 n.5 (1st Cir. 2024); Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004).  Here, "[t]he parties identify no relevant distinctions between the federal and state-law schemes -- leaving us at liberty to analyze the two sets of claims jointly for purposes of this appeal." Menninger v. PPD Dev., L.P., 145 F.4th 126, 133 n.2 (1st Cir. 2025).

Hasbro argues that we should not consider the claims together because the plaintiffs waived any argument about the state-law claims by failing to address them separately on appeal.  But, in their opening brief, the plaintiffs explained that, in their view, the Rhode Island statutes were simply the state-law "correlative" of Title VII -- meaning that they intended that their appellate arguments apply to the state and federal claims in like fashion.  Given that we have treated such claims together in the past and that Hasbro has identified no legal difference between them, we think the plaintiffs' approach here was adequate.  We thus treat the arguments as to the state-law claims as preserved, without prejudice to any party addressing them separately from the Title VII claims as the case progresses on remand.

[3]    The district court also stated that the case did not turn on the plaintiffs' exemption requests in any event because they, like all Hasbro employees, were accommodated by being permitted to wear a mask while indoors in lieu of being vaccinated, making the requested accommodations unnecessary.  We do not, however, see any support for the existence of this alleged alternative to the vaccination requirement in the amended complaint or elsewhere in the record.

important question," according to the court, was not "whether an employee has a religious belief not to mistreat her body" but "whether the employee's belief that the vaccine qualifies as a mistreatment is itself based in religion."  Concluding that the plaintiffs' beliefs were insufficiently connected to a religious tenet, the court held that this rationale was inadequate to support their accommodation requests.  As to the alleged use of tissue from aborted fetuses in the development of the vaccines, the court held that opposition to abortion was "moral" not religious and therefore also inadequate.  Separately, the court concluded that the complaint failed to plead an adverse employment action under the standards necessary to maintain retaliation and discrimination claims, respectively, and, as to DeAngelis, that there was "no nexus" between the promotion that she missed and her refusal to vaccinate herself against COVID-19.

## II.

After the district court dismissed the plaintiffs' complaint, we decided Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9 (1st Cir. 2024) and Thornton v. Ipsen Biopharmaceuticals, Inc., 126 F.4th 76 (1st Cir. 2025).  In Bazinet, we held that an employee who had been discharged for refusing to take the COVID-19 vaccine had stated a Title VII religious-discrimination claim where she had alleged that her refusal to take the vaccine was based on (1) her religiously

grounded opposition to abortion, and (2) her understanding that the COVID-19 vaccine was developed using cells obtained from aborted fetuses. See 133 F.4th at 12, 17. Then, in Thornton, we reinstated a Title VII claim brought by an employee who objected to receiving the COVID-19 vaccine based on her belief that her body had been created in God's image and that taking a vaccine would "defil[e]" it. 126 F.4th at 82.

Hasbro properly does not urge us to affirm the district court's dismissal order based on its conclusion that the plaintiffs' refusal to take the COVID-19 vaccine was based on something other than a religious belief. As we explained in Bazinet, the fact that the plaintiffs' opposition to abortion may have a moral component or may be held by others solely for moral reasons does not mean that, for these plaintiffs, the position lacks a religious character. See Bazinet, 113 F.4th at 16-17. And, as we explained in Thornton, "my-body-is-my-temple arguments rooted in a plaintiff's religious beliefs are sufficient to plead the existence of a bona fide religious belief" for the purposes of Title VII. Thornton, 126 F.4th at 83-84 (collecting cases). The plaintiffs here sufficiently alleged that their opposition to taking the COVID-19 vaccine was based on a comprehensive system of religious belief. No more is required at this stage. See id. at 84.

We are left then to consider whether we may affirm the dismissal of the plaintiffs' retaliation and discrimination claims on the alternate grounds provided by the district court or, as Hasbro urges, for another basis apparent from the record. See Am. Bd. of Internal Med. v. Rushford, 114 F.4th 42, 57 (1st Cir. 2024). We start with the retaliation claims.

**A.**

To prevail on a Title VII retaliation claim, a plaintiff must prove that she engaged in conduct protected by the statute and that, because of her conduct, her employer took materially adverse action against her. See 42 U.S.C. § 2000e-3(a). In this context, an adverse action is an employer action that "well might have 'dissuaded a reasonable worker'" from engaging in the protected activity. Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68-69 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); Stratton v. Bentley Univ., 113 F.4th 25, 41-42 (1st Cir. 2024).

To survive a motion to dismiss, a plaintiff need only plead facts that make the claim plausible. See Carrero-Ojeda v. Autoridad De Energía Eléctrica, 755 F.3d 711, 717-18 (1st Cir. 2014); Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013). To determine whether a plaintiff has done so, we "read [the] complaint[] 'as a whole,'" Rodríguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 283 (1st Cir. 2014)

(quoting García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)), without demanding a "one-to-one relationship between any single allegation and a necessary element of the cause of action," Rodríguez-Reyes, 711 F.3d at 55, or the narration of "every fact necessary to win at trial," Rodríguez-Vives, 743 F.3d at 283; accord Thomas v. JBS Green Bay, Inc., 120 F.4th 1335, 1337 (7th Cir. 2024). Plausibility is required, see Ashcroft v. Iqbal, 556 U.S. 662 (2009), but there is no requirement to plead a complete prima facie case of liability, see Rodríguez-Reyes, 711 F.3d at 54 ("It is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage."); Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 24 (1st Cir. 2014) ("We have explicitly held that plaintiffs need not plead facts in the complaint that establish a prima facie case under Title VII . . . ."); Frith v. Whole Foods Mkt., Inc., 38 F.4th 263, 275 (1st Cir. 2022) (similar).

Nevertheless, we have often employed "the elements of a prima facie case . . . as a prism to shed light upon the plausibility of the claim." Rodríguez-Reyes, 711 F.3d at 54; see also, e.g., Carrero-Ojeda, 755 F.3d at 718. And here, matching the allegations in the amended complaint with the two presently contested elements of the plaintiffs' retaliation claims -- the adverse actions the plaintiffs suffered and the causal connection between those actions and their protected conduct -- helpfully

illustrates why the retaliation claims are plausible.[4]    See Rodríguez-Reyes, 711 F.3d at 54 (noting that the elements of a prima facie case of liability remain relevant to the plausibility assessment because they form "part of the background against which [the] plausibility determination should be made"); Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011) (similar).

Respecting the adverse actions allegedly taken by Hasbro, the amended complaint states that, after the plaintiffs requested an accommodation from Hasbro's COVID-19 vaccination requirement, they received warnings based on alleged violations of company policy that had occurred months earlier; that these warnings precluded their advancement within the company, including, as to DeAngelis, by disqualifying her from a previously promised promotion and, as to Tomaselli, by removing her from consideration for two available promotions; and that, by the time DeAngelis returned from leave, her job had been given to someone else.  Various other allegations -- such as the removal of Tomaselli from internal organizational charts while she was on leave; her assignment to events requiring vaccination; the

---

[4]    Hasbro concedes for the purposes of appeal that, in requesting religious accommodations, the plaintiffs engaged in activity protected under Title VII, and we accept that concession. See Evans-García v. United States, 744 F.3d 235, 239 (1st Cir. 2014); Computervision Corp. & Subsidiaries v. Comm'r, 164 F.3d 73, 75 (1st Cir. 1999).

dissemination of the plaintiffs' medical information to coworkers; and the company's new practice of reviewing the plaintiffs' vacation requests -- add color to what is at its core a story of Hasbro's reprisals resulting in the plaintiffs' marginalization within the company.

It is unnecessary to decide at this preliminary stage "whether each of these individual allegations would, standing alone, be sufficient to state a plausible claim of retaliation under Title VII." Rodríguez-Vives, 743 F.3d at 286. Some -- such as the investigation of the plaintiffs' alleged failure to wear a mask at the charity event and the associated warnings, their subsequent removal from eligibility for promotions, and the denial of a specific promotion to DeAngelis -- may, if proved, constitute adverse actions that could individually ground employer liability. See Rae v. Woburn Pub. Schs., 113 F.4th 86, 106 (1st Cir. 2024) (noting that denial of a promotion "plainly constituted [an] adverse employment action[]" for retaliation purposes); Billings v. Town of Grafton, 515 F.3d 39, 54 (1st Cir. 2008) (noting that an employee subjected to "a formal investigation and reprimand -- including a threat of further, more serious discipline -- might well choose not to" engage in protected conduct (citation modified)). Others, based on the limited information before us, seem more like the types of "petty slights" and "minor annoyances" that may not individually support a Title

VII retaliation claim. Morales-Vallellanos v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (quoting Burlington N., 548 U.S. at 68).

If discovery reveals that some or all these allegations cannot independently support liability for retaliation, "they can be pared off on summary judgment." Thomas, 120 F.4th at 1338. For now, the important point is that the allegations in the complaint possess sufficient "cumulative weight" to "plausibly paint a picture that would allow a factfinder to find [Hasbro's] conduct sufficient to deter a reasonable person" from engaging in protected conduct had they known what would result. Rodríguez-Vives, 743 F.3d at 285-86 (concluding that a similar constellation of actions was sufficient to permit a Title VII retaliation claim to survive a motion to dismiss).

That leaves causation, and here, too, the amended complaint demonstrates plausibility. See Rodríguez-Reyes, 711 F.3d at 56. To start, the complaint's chronology suggests retaliation. See id. at 56-57. Three days after Tomaselli requested an accommodation, Hasbro removed her access to its offices. Just weeks after that, DeAngelis received a written warning and an investigation into Tomaselli started, which resulted in a similar warning. We have held similar periods to be close enough to support a reasonable inference of causation on a motion to dismiss. See Garayalde-Rijos, 747 F.3d at 25 (adverse treatment occurred "only weeks" after plaintiff prevailed at the

EEOC on separate complaint); accord Norgren v. Minn. Dep't of Hum. Servs., 96 F.4th 1048, 1055 (8th Cir. 2024) (similar, three weeks).

And here, the causal inference arising from temporal proximity is stronger when Hasbro's alleged actions are viewed in context.  See Garayalde-Rijos, 747 F.3d at 15 (explaining that temporal analysis must be conducted "holistically").  Hasbro had taken no action in connection with the masking incident at the charity event in the roughly three months before plaintiffs' accommodation requests, and the punishments that Hasbro ultimately imposed appear, on the face of the complaint, to be at least arguably disproportionate to the alleged infractions.  Other innocent inferences could be drawn, but it is a "common-sense, plausible reading of [the] complaint" that Hasbro's issuance of the warnings and denial of Tomaselli's access to its facilities close in time to the accommodation requests suggest retaliation. Id. at 25; see Iqbal, 556 U.S. at 679.

The plausibility of a causal link between the plaintiffs' protected conduct and the warnings issued by Hasbro also bolsters an inference that the company's other, later actions were connected to the plaintiffs' protected conduct.  Hasbro cited the warnings to disqualify the plaintiffs from promotions and reminded Tomaselli that when she returned from leave her warning was still in effect.  If the warnings were retaliatory, it is plausible that these later actions based upon them were similarly

motivated.    And, against this backdrop, other roughly contemporaneous actions -- such as Hasbro's removal of Tomaselli from the company's organization chart and her manager's informing Tomaselli's coworkers that she was unlikely to return after her medical leave -- also begin to assume a plausibly retaliatory cast.

It bears emphasis that retaliation is not the only possible explanation for Hasbro's actions.  And the plaintiffs have not yet proven any of the facts alleged.  But, at this stage, they need not establish the truth of their allegations or that a retaliatory inference is most probable.  See Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 46 (1st Cir. 2013) ("Assuming that [the plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among plausible interpretations of the evidence will be a task for the factfinder." (alteration in original) (quoting Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 190 (2d Cir. 2012))); McDonough v. Anoka County, 799 F.3d 931, 946 (8th Cir. 2015) ("[F]erreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage." (quoting Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc., 648 F.3d 452, 458 (6th Cir. 2011))).  The plaintiffs were only required to plead facts showing that their retaliation claims are plausible, and they have done so.

Hasbro resists this conclusion, arguing that the plaintiffs' failure to wear masks at the charity event provides an obvious alternative explanation for both the warnings they received and the consequences stemming therefrom. An obvious alternative explanation for the defendant's conduct may prevent a claim from tipping from possible to plausible, see, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 567-68 (2007), and we recognized in Firth that sometimes such an explanation exists for an employer's disciplinary measures, see, e.g., Frith, 38 F.4th at 274-76.

However, unlike in Frith, where mask-wearing prompted by the onset of the COVID-19 pandemic and the "controversial message" that the plaintiffs wished to display on their masks provided an obvious non-discriminatory reason for the employer to begin enforcing its previously dormant dress code, see id. at 274-75, there is no obvious nonretaliatory explanation here for why Hasbro investigated and disciplined both plaintiffs for the same alleged violation of company COVID-19 policies months after the violations occurred and just following their accommodation requests. There are other possible explanations -- and Hasbro has suggested one, noting that neither plaintiff claims that they were wearing a mask at the volunteer event or otherwise alleges compliance with the masking policy at that event. But the facts alleged do not make those other explanations so strong, or the plaintiffs' preferred

retaliatory explanation so weak, that dismissal is warranted. See Rodríguez-Vives, 743 F.3d at 286; Evergreen Partnering Grp., 720 F.3d at 45-46; see also Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 373 (8th Cir. 2017) ("Not every potential lawful explanation for the defendant's conduct renders the plaintiff's theory implausible.  A defendant is not entitled to dismissal if the facts are merely consistent with lawful conduct." (citation modified)).

Similarly, Hasbro contends that various actions that it is alleged to have taken during the plaintiffs' respective medical leaves were caused by the leaves, not the accommodation requests. This argument founders for the same reason:  Although the medical leave or "other, undisclosed facts may explain the sequence better," Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010), that does not render the plaintiffs' claims implausible.  Rather, it simply serves to underscore "that plausibility of allegations may not be matched by adequacy of evidence." Rae, 113 F.4th at 110 (citation omitted); see also Sepúlveda-Villarini, 628 F.3d at 30 ("A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . .").  And, in any event, even if the plaintiffs' medical leaves caused certain of Hasbro's actions, that would not dispel the plausible inference of retaliation arising from company

conduct that occurred <u>before</u> the plaintiffs began their respective leaves.

For the reasons discussed, the district court erred in dismissing the plaintiffs' retaliation claims.

**B.**

Although the plaintiffs' religious discrimination claims present a closer question, we likewise conclude that their dismissal was unwarranted. Title VII's anti-discrimination provision, section 2000e-2, prohibits employers from discriminating against an employee because of the employee's religious beliefs, observances, or practices. <u>See</u> 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1). The statute covers an employer's failure to reasonably accommodate an employee's religious belief or practice, <u>see, e.g.</u>, <u>Lowe</u> v. <u>Mills</u>, 68 F.4th 706, 718-19 (1st Cir. 2023), and an action taken against an employee due, at least in part, to the employer's religiously-based animus, <u>see, e.g.</u>, <u>Ahmed</u> v. <u>Johnson</u>, 752 F.3d 490, 503 (1st Cir. 2014); <u>cf. Lockridge</u> v. <u>Univ. of Me. Sys.</u>, 597 F.3d 464, 473 (1st Cir. 2010); <u>see also</u> <u>Carter</u> v. <u>Local 556, Transport Workers Union of America</u>, 156 F.4th 459, 479 (5th Cir. 2025) ("[A] plaintiff has two paths to show a claim of religious discrimination under Title VII, specifically by showing that an employer . . . actively discriminated against the employee based on the employee's religion or failed to accommodate the employee's religious 'observance or practice' where such

accommodation would not cause undue hardship." (emphasis omitted)).

Whichever theory is advanced -- at this stage, the "complaint need not pin [the] claim for relief" to either one, Skinner v. Switzer, 562 U.S. 521, 530 (2011) -- the challenged discrimination must amount to the actual or constructive discharge of the plaintiff employee, or otherwise affect the "compensation, terms, conditions, or privileges" of their employment, 42 U.S.C. § 2000e-2(a)(1); see Thornton, 126 F.4th at 81-82; Exby-Stolley v. Bd. of Cnty. Comm'rs, 979 F.3d 784, 793 & n.3 (10th Cir. 2020) (collecting cases); see also EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 771 (2015).

The plaintiffs' amended complaint alleges, in essence, that after receiving the accommodation requests, Hasbro began to discriminate against the plaintiffs because of their religion instead of reasonably accommodating their religious beliefs and practices by exempting them from the company's vaccination requirement. The hybrid character of these allegations, combining aspects of a reasonable-accommodation theory with assertions of discrimination based on religious animus, distinguishes this case from Bazinet and Thornton, as well as several other similar decisions, where the plaintiff-employee unsuccessfully requested an exemption from an employer's vaccine policy and then the employer terminated the employee for failing to comply with the

policy.  See Bazinet, 113 F.4th at 12; Thornton, 126 F.4th at 79; Lowe, 68 F.4th at 709; Rodrique v. Hearst Commc'ns, Inc., 126 F.4th 85, 87 (1st Cir. 2025).  In those cases, once the employee established the religious nature of the objection to the policy, the question of whether the later termination violated section 2000e-2 turned on the reasonableness of the requested accommodation.  See Bazinet, 113 F.4th at 12; Thornton, 126 F.4th at 79; Lowe, 68 F.4th at 709; Rodrique, 126 F.4th at 87. Here, by contrast, the amended complaint proceeds against Hasbro on multiple, overlapping fronts, some implicating the reasonableness of the accommodation and others aimed at Hasbro's alleged religious animus.

On appeal, the plaintiffs principally focus on whether Hasbro actively discriminated against them based on religious animus.  We follow suit, looking again to the elements of the claim for guidance on whether the amended complaint, taken as a whole, has alleged facts that make the plaintiffs' religious discrimination claims plausible.  See supra III.A.  Because we have already established that the complaint plausibly alleges that the plaintiffs' religious beliefs, as expressed in their accommodation requests, fell within Title VII's protection, see supra II., we need only consider whether the plaintiffs have plausibly alleged that Hasbro took adverse action against them because of these beliefs, see 42 U.S.C. § 2000e-2(a)(1).

We start with the adverse employment action.  With its focus on actions directly affecting the plaintiff's employment, section 2000e-2(a)(1) is different, and often more demanding, than its counterpart in the retaliation context, where an employer's conduct is actionably adverse so long as it would have deterred a reasonable employee from engaging in protected activity, see supra III.A.  See Rivera-Velázquez v. Regan, 102 F.4th 1, 17 n.11 (1st Cir. 2024).  Hasbro contends that none of the actions alleged in the amended complaint are adverse for purposes of section 2000e-2(a)(1), asserting that most amount to nothing more than "petty slights" and "minor annoyances." Morales-Vallellanos, 605 F.3d at 36 (quoting Burlington N., 548 U.S. at 68).  With respect to the warnings, Hasbro argues that they are not actionably adverse because the plaintiffs have not alleged that they were accompanied by any "tangible consequences." Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 73 (1st Cir. 2011).  In making this argument, Hasbro discounts the plaintiffs' allegations that they were denied promotions because of the warnings on the basis that the amended complaint failed to identify "promotion[s] for which [the plaintiffs] were qualified and would have applied but for their written warnings."  And it dismisses DeAngelis's allegation that her job was given to someone else while she was on leave for similar reasons, contending that the plaintiffs have not detailed precisely how DeAngelis's role changed when she returned.

The absence of "the exact details of each incident," Rodríguez-Vives, 743 F.3d at 286, which might prove fatal later in the litigation, see, e.g., Zabala-De Jesus v. Sanofi-Aventis P.R., Inc., 959 F.3d 423, 430-31 (1st Cir. 2020), does not render the plaintiffs' discrimination claims implausible. Hasbro's failure to select the plaintiffs for certain promotions and its giving of DeAngelis's job to a new hire while she was on leave are substantially like the sorts of actions that may serve as predicates for a viable Title VII discrimination claim. See López-Hernández v. Terumo P.R. LLC, 64 F.4th 22, 28 (1st Cir. 2023) (failure to promote can predicate Title VII claim); Theidon v. Harvard Univ., 948 F.3d 477, 495 (1st Cir. 2020) (same, for denial of tenure); O'Horo v. Bos. Med. Ctr. Corp., 131 F.4th 1, 17-18 (1st Cir. 2025). And the allegations in the amended complaint concerning these incidents, while not robust, are not so "threadbare" that they must be discarded as conclusory. Rodríguez-Vives, 743 F.3d at 286 (quoting Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011)). The amended complaint identified specific promotions denied to the plaintiffs, even if it did not say much about them, and alleged that DeAngelis's position was taken away from her, even though she could have offered more details about her subsequent responsibilities.

The plaintiffs' allegations regarding promotion and reassignment are sufficient to establish an adverse employment

action.  If certain allegations, as developed and contextualized by discovery, are insufficient to constitute adverse actions, the plaintiffs' discrimination claims, like their retaliation claims, may be pared down accordingly at summary judgment.[5]  See Thomas, 120 F.4th at 1337.

Turning to causation, section 2000e-2 requires the employee's religious observance, belief, or practice to have been "a 'motivating factor' in an employment decision[]" made by the employer.  Abercrombie, 575 U.S. at 773-74 (quoting 42 U.S.C. § 2000e-2(m)); see Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 343 (2013).  To prevail on their discrimination claims, then, the plaintiffs will have to prove that Hasbro was motivated to take an adverse employment action against them at least in part because of the religious beliefs that underpinned their accommodation requests, and not just because of the accommodation requests per se or some other innocent reason.  See 42 U.S.C.

_____

[5]    Hasbro separately argues that the plaintiffs cannot maintain a section 2000e-2 claim because it reasonably accommodated their religious beliefs and practices.  But the accommodation Hasbro contends that it provided (permitting the plaintiffs to work remotely) was not the accommodation that plaintiffs sought (permitting them to work remotely most of the time, and to come into the office as needed), and Hasbro has developed no argument that the latter was unreasonable. Regardless, even if Hasbro had provided the plaintiffs the requested accommodation, that would not render implausible the amended complaint's separate allegations that Hasbro had actively discriminated against the plaintiffs because of their religious beliefs.

- 25 -

§ 2000e-2(a); Stratton, 113 F.4th at 38 ("Put broadly, Title VII's substantive provision protects against discrimination based on who one is (i.e., a member of a protected class) while the retaliation provision protects what one does (i.e., engages in protected conduct)."). And, to survive Hasbro's motion to dismiss, the plaintiffs' amended complaint must contain sufficient facts to make an inference of religiously motivated discrimination plausible. See 42 U.S.C. §§ 2000e(j), 2000-2(a)(1); Waleyko v. Phelan, 146 F.4th 89, 95 (1st Cir. 2025).

Seizing on the paucity of factual allegations suggesting such a discriminatory motive, Hasbro asserts that the plaintiffs have failed adequately to allege causation. It contends that the plaintiffs have offered nothing more than conclusory -- and therefore implausible -- assertions of a causal connection between their religious beliefs and the allegedly adverse actions they purportedly suffered.

On this point, the amended complaint is borderline. Not atypically in Title VII cases, the amended complaint lacks smoking-gun allegations of Hasbro's animus. See Theidon, 948 F.3d at 495. But the plaintiffs appear to claim, in part, that Hasbro used the alleged violations of company policy at the June charity event as a pretext to discriminate against them based on their religious beliefs. As explained earlier, plaintiffs allege that Hasbro had taken no action in connection with that incident in the

roughly three months before the plaintiffs requested religious accommodations for the vaccination requirement. Then, just about two weeks after Tomaselli made her request -- and over four weeks after DeAngelis's request -- Hasbro issued them written warnings.

Unlike other protected characteristics, such as race or sex, one's religious beliefs often are not readily apparent to an employer. See Geraci v. Moody-Tottrup, Int'l, 82 F.3d 578, 581 (3d Cir. 1996) ("An employee's religion . . . is often unknown to the employer . . . ."). Here, Hasbro may not have learned about the plaintiffs' particular religious beliefs and practices -- which concerned then-current events and views about those events that not all Christians shared -- until they were disclosed to the company in their accommodation requests.

Thus, for reasons similar to those provided for the retaliation claims, we conclude that, based on (1) Hasbro's initial delay in enforcing company policy; (2) the temporal proximity of the plaintiffs' disclosure of their particular religious beliefs to the alleged adverse employment action based on the claimed policy violation; and (3) the arguably disproportionate nature of the punishment for the violation, the plaintiffs have plausibly pleaded that they suffered actionable religious discrimination. See Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662-63 (1st Cir. 2010) ("Pretext can be shown by such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997))). And nothing in the complaint indicates that Hasbro has asserted another basis for its actions, which would provide an obvious non-discriminatory explanation for its conduct. Cf. Frith, 38 F.4th at 275.

### III.

Because the plaintiffs have alleged plausible claims of retaliation and religious discrimination, we **vacate** the order dismissing plaintiffs' claims under Title VII, the Rhode Island Civil Rights Act, and the Rhode Island Fair Employment Practices Act and **remand** for further proceedings consistent with this opinion. Costs are awarded to the plaintiffs.

**So ordered**.